**Isaura AREVALO, Appellant,**

v.

**Jesse MILLAN, Appellee.**

**No. 01–97–01123–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 3, 1998.

Lily Pleitez, Houston, for appellants.

Leonardo R. Esparza, Houston, for appellees.

Shawn Casey, Houston, for court reporters.

Before the court en banc.

**ORDER EN BANC**

PER CURIAM.

The appellate record in this case costs $3,423. Appellant wants it for free, claiming she is indigent. Judge Bonnie Crane Hellums denied a free record. We affirm that order.

Appellant owns jewelry and a car admittedly worth $5,500, but she did not list either asset on her affidavit of indigency, and she did not reveal the value of the car, at $5,000 her most valuable asset, until she was cross-examined. On direct examination, she had testified the car was two years older than it was. Also, appellant revealed for the first time on cross-examination that an $80 "monthly" vehicle maintenance expense, which she had listed on the affidavit and reaffirmed on direct examination, was a one-time-only expense. This alleged monthly expense equaled 15% of appellant's monthly disposable income, until she abandoned it.

The question is whether the judge abused her discretion by ruling that appellant must use $3,423 of her admitted $5,500 liquid assets to pay for the record. We hold the judge did not abuse her discretion.

### Mandamus or appeal?

■ Appellant sought a writ of mandamus in cause no. 01–97–01167–CV to get a free record in this appeal. After she filed her request for mandamus, the Texas Supreme Court decided *In re Arroyo*, 42 Tex.Sup.Ct.J. 64, 64–65, —— S.W.2d ——, —— – ——, 1998 WL 716921 (Oct. 15, 1998), which held that appeal, not mandamus, is now the sole way to review a denial of a free appellate record. The amended Rules of Appellate Procedure provide a mechanism for review "which is functionally identical to mandamus review used previously." *Id.* Accordingly, instead of reviewing the indigency issue on appellant's mandamus case, we will review the issue as a matter ancillary to appellant's appeal. We will deny the mandamus by separate order in that case. *See In re Isaura Arevalo*, No. 01–97–01167–CV, 1998 WL 862495 (Tex.App.—Houston [1st Dist.], Dec. 3, 1998) (order) (unpublished).

1. In the trial court and on appeal, appellant has been represented by a free lawyer from the University of Houston Legal Aid Clinic. At trial, the clinic paid the cost of a translator and offered to pay for examinations by a psychologist. When the court reporter and the district clerk argued in the trial court that appellant had not given complete information about whether her Legal Aid attorney had agreed to pay or advance the

### Judge Hellums's October 10, 1997 order

Judge Hellums found that appellant had failed to disclose in her affidavit of indigency all her assets. The judge also found that appellant did not comply with TEX.R.APP.P. 20.1(b)(11), which requires appellant to "give complete information about ... whether an attorney has agreed to pay or advance court costs." [1] These findings are significant because they show the judge doubted appellant's credibility.

### Appealing as an indigent; standard of review

■ A party may appeal as an indigent by complying with TEX.R.APP.P. 20.1(b). When, as here, the district clerk and the court reporter file a contest, the party must prove indigence. TEX.R.APP.P. 20.1(g); *Griffin Indus., Inc. v. Thirteenth Court of Appeals*, 934 S.W.2d 349, 351 (Tex.1996); *Cronen v. Smith*, 812 S.W.2d 69, 70 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). In the trial court, the test for indigency is whether a preponderance of the evidence shows the party would be unable to pay costs, "if (s)he really wanted to and made a good faith effort do so." *Allred v. Lowry*, 597 S.W.2d 353, 355 (Tex.1980); *Cronen*, 812 S.W.2d at 70. When, as here, the trial judge sustains the contest, then we must decide whether the judge abused her discretion. *Cronen*, 812 S.W.2d at 70. Abuse of discretion is a heavy burden. It means that the judge acted without reference to any guiding rules or principles, that the facts and law permit only one decision and it is the opposite of the trial judge's decision, and that the ruling is so arbitrary and unreasonable as to be clearly wrong. *Cronen*, 812 S.W.2d at 71.

### The evidence in the trial court

Appellant's affidavit of indigency listed the following assets and monthly expenses:

costs of appeal, appellant's attorney was conspicuously silent. The attorney did not seek to amend the affidavit of indigency, to testify, or to give evidence that she had not agreed to pay costs. *See American Comm. Telecomm., Inc. v. Commerce North Bank*, 660 S.W.2d 570, 571 (Tex.App.—San Antonio 1983, no writ) (a party may amend a defective affidavit of inability to pay costs).

(1) Monthly earnings of $770 net and no property except personal effects.

(2) Monthly expenses of rent ($167.50); child support ($200); telephone ($20); utilities ($48); food and toiletries ($100); maintenance and repair of 1984 Chevy truck ($80);[2] clothing, meals, and entertainment of children during visitation ($100); laundry ($20), attorney ad litem fee ($50).

The affidavit also stated that appellant had been denied a bank loan for appeal costs.[3]

Appellant testified her monthly net wage income was $700 to $720,[4] lower than in her affidavit of indigency, and that $200 was withheld monthly for child support. She testified she had previously taken a second job to pay for car repairs, but she quit because, "I pick up the children on Friday and I return them on Sunday."[5] Appellant was in good health and left work daily at 3:30 p.m.

Appellant testified that her divorce decree awarded her a portable stereo, a portable TV, a camera, a .22 magnum rifle, a china cabinet, a bedroom set, and a 40% interest in her former husband's retirement plan, but no benefits were yet due.[6] Appellant testified that, except for the china cabinet and the bedroom set, her former husband still possessed the personal items listed above.

Appellant owned jewelry for which a pawn shop had offered $500, and she twice offered in court to sell it to pay for the record. She also owned a 1992 Toyota Supra in her name that was worth $5,000, apparently free and clear. No debt was mentioned. Within the past year, she had purchased a color TV, a VCR, and a stereo cassette player.

**2.** The appellant admitted when cross-examined that this was a one-time expense, not a monthly charge.

**3.** Appellant introduced into evidence Texas Commerce Bank's letter denying her application for a loan of $45,000, a figure unrelated to the costs in this case.

**4.** However, appellant offered into evidence one pay record which showed that from September 8 to September 21, 1997, her gross wages were $401.46 and her deductions were $43.62. This extrapolates to a monthly gross wage of $875 less deductions of $95, leaving a net income of $780,

In summary, appellant's affidavit of indigency did not reveal the existence of her most valuable property, the Toyota and the jewelry. Although she did not list that property, appellant testified to and listed under oath as a "monthly expense" an item equal to more than 15% of her monthly disposable income, and she did not reveal it as a one-time expense until she was cross-examined. Appellant never disclosed the value of her most expensive property—the $5,000 1992 Toyota—until she was cross-examined.

### Abuse of discretion

■ Appellant admittedly could have sold the $5,000 1992 Toyota and the $500 jewelry, purchased the record for $3,423, and still had $2,077 cash remaining. Even if the judge believed appellant was telling the truth, which she had reason not to do and apparently did not do, her decision was not an abuse of discretion. The facts and the law here do not permit but one decision—in favor of appellant. *See Cronen*, 812 S.W.2d at 71. A judge is not required by law to find that a person holding $5,500 of reluctantly revealed liquid assets cannot afford a $3,423 record. We hold that Judge Hellums did not abuse her discretion.

The order denying a free record is affirmed.

Justice O'CONNOR, joined by Justices MIRABAL and ANDELL, dissents from this order.

O'CONNOR, Justice, dissenting.

I dissent from the en banc order.

not $700–$720 as she had testified. Appellant produced no evidence of any other period. The discrepancy was pointed out in the trial court.

**5.** Appellant's children live with their father. She has possession every other weekend.

**6.** Appellant could not receive benefits until her former husband did. As of October 1997, he had 13 years, 6 months of service and would qualify for a benefit at age 60, but no evidence showed his age, whether his benefit had vested, or whether appellant had tried to sell or mortgage her interest.

The en banc Court finds that Isaura Arevalo, who earns her living working in an egg roll factory, is not indigent. The primary reason for the Court's decision is that Arevalo did not list two items of property on her affidavit of indigence. That omission on the affidavit was insignificant because it did not mislead the trial court or the court reporter or the other parties about her assets.

Based on the omission, the en banc Court attacks Arevalo's credibility. The Court forgets that the trial court had reviewed all the property of the parties and divided it as part of the divorce. The assets the en banc Court faults Arevalo for not listing were revealed during the divorce proceeding. No one was misled about Arevalo's property.

The omission from the affidavit was clearly the fault of Arevalo's attorney, and was not a conscious decision on Arevalo's part to withhold information from the trial court. Arevalo was represented by the UH Legal Aid Clinic, Inc., associated with the University of Houston Law Center. The errors in the affidavit of indigency were corrected at the hearing. We should not penalize Arevalo for an insignificant mistake by a legal aid attorney. Arevalo wants to appeal the ruling that awarded her children to her former husband.

Arevalo is 31 years old and had been married to Jesse Millan for about nine years at the time she filed her petition for divorce. She is not fluent in English, and testified through an interpreter at the hearing on the contest to her indigency ("the October 10 hearing"). She lives in an apartment with a roommate with whom she shares expenses. She works as an egg roll wrapper at Michoan Food. Her work day starts at 7:00 a.m. and ends at 3:30 or 4:00 p.m., Monday through Friday.

At trial and on appeal, Arevalo is represented by the UH Legal Aid Clinic, Inc. At the October 10 hearing, the direct and redirect examination of Arevalo, and the questioning of other witnesses on behalf of Arevalo, was conducted by a law student under the aegis of a supervising attorney from the legal clinic.

The June 20, 1997, final decree of divorce awarded Arevalo the following:

(1) All household furniture, furnishings, fixtures, goods, appliances, and equipment in her possession or subject to her sole control.

(2) The china cabinet and bedroom set in her possession.

(3) The following items that were in the possession of Millan: portable stereo, portable television, photo camera, and 22 magnum rifle.

(4) All clothing, jewelry, and other personal effects in her possession or subject to her sole control.

(5) Any and all sums of cash in the possession of or subject to her sole control.

(6) The following motor vehicles in her possession: (i) 1984 Chevy truck and (ii) 1990 Toyota Supra car.[1]

(7) Forty percent of any and all sums, whether matured, accrued, vested or otherwise, in Millan's retirement, profit-sharing, or employee savings plan existing by reason of his employment from June 1, 1987 through May 1, 1997.

The decree directed both Arevalo and Millan to share evenly the ad litem's fee of $1,000, to be paid at a rate of $50 per month. Arevalo was ordered to pay child support of $200 per month, to be withheld from her earnings. Although both parents were named joint managing conservators, Millan was given primary possession of the two daughters, with Arevalo having possession on the first, third, and fifth Friday of each month, starting at 6:00 p.m. and ending at 6:00 p.m. on Sunday and on Wednesdays, beginning at 6:00 p.m. until 8:00 p.m.[2] Arevalo is required to pick up the children for her

---

1. The decree gave the year of the Toyota as 1990. At the October 10 hearing, Arevalo gave the year of the Toyota as 1990. It was the legal representative of Arevalo who referred to the year of the Toyota as 1992 when the legal representative attempted to correct some confusion concerning the Chevy truck and the Toyota.

2. Arevalo also received possession on certain Thanksgiving and Christmas holidays, during certain spring breaks, on the child's birthday, on Mother's Day, and for extended summer periods.

periods of possession, and she testified that she lives approximately 20 to 25 minutes from her former husband.

Arevalo filed her notice of appeal and her affidavit of indigency. Her affidavit was contested by the district clerk and by one of the court reporters who took down the testimony at trial. Following the October 10 hearing, the trial court[3] signed an order denying a free record on appeal. In pertinent part, the order provided as follows:

(1) That Petitioner [Arevalo] failed to comply with the mandatory requirements of Rule 34.6(b) and make a written request of any of the official reporters to prepare the reporter's record at or before the time Petitioner perfected her appeal; and

(2) That Petitioner's Affidavit of Indigency failed to comply with the mandatory *prima facie* requirements of Rule 20.1(b) of the Texas Rules of Appellate Procedure because said affidavit failed to state "whether an attorney has agreed to pay or advance court costs"; and

(3) That Petitioner's Affidavit of Indigency failed to fully disclose all assets belonging to Petitioner which could be used or potentially be used to cover the costs of a record on appeal; and

. . . .

It is therefore ORDERED, ADJUDGED AND DECREED that Motion to Appeal as Indigent filed by Petitioner ISAURA AREVALO be and is hereby denied.

### Issues in this proceeding

The questions in this case are whether the trial court abused its discretion (1) when it concluded that Arevalo's failure to comply with Tex.R.App.P. 34.6(b) barred her appeal as an indigent, (2) when it concluded that Arevalo's failure to comply with all the requirements of Tex.R.App.P. 20.1(b) barred her appeal as an indigent, (3) when it concluded that Arevalo's affidavit of indigency did not fully disclose all assets belonging to Arevalo that could be used to cover the costs of a record on appeal, and (4) when it held that Arevalo did not establish her indigency and sustained the contest on this basis as well as on the grounds enumerated in (1) through (3).[4]

### 1. Noncompliance with Rule 34.6(b)

The en banc opinion does not address whether noncompliance with Rule 34.6(b) prevents an appeal as an indigent. Clearly, it may not. An appellant must request in writing, at or before the time for perfecting the appeal, that the official reporter prepare the reporter's record. Tex.R.App.P. 34.6(b)(1). An appellate court may not refuse to file a reporter's record because an appellant did not timely request it. Tex. R.App.P. 34.6(b)(3); *Newding v. GECO Geophysical Co.*, 817 S.W.2d 146, 147 (Tex. App.—Houston [1st Dist.] 1991) (order).[5]

Rule 20.1 does not require an appellant to comply with Rule 34.6(b) to establish indigency. Under the new rules, an appellant is no longer required to give notice of the filing of an affidavit of indigency to the court reporter. Tex.R.App.P. 20.1(d)(1). Because an appellant is no longer required to give notice of the affidavit directly to the court reporter as a condition of establishing indigency status, it is neither logical nor reasonable to interpret Rule 34.6(b) to require an appellant to request a record as a condition of establishing indigency status. To the extent that the trial court denied Arevalo the right to proceed as an indigent on appeal because of her failure to comply with Rule 34.6(b), the panel that initially considered this case believed the trial court abused its discretion.

### 2. Noncompliance with Rule 20.1(b)

---

3. The same judge presided at the trial, signed the final decree, presided at the hearing on the contest, and signed the order denying Arevalo a free record on appeal.

4. Although Arevalo argues that the trial court based its decision on procedural grounds, we find that the trial court, in effect, sustained the contest to the affidavit of indigency based on both procedural grounds and lack of indigency on the evidence.

5. *Newding* interpreted former Tex.R.App.P. 53(a), which is substantially the same as current Tex. R.App.P. 34.6(b)(3), which provides that an appellate court may not refuse to file a reporter's record because of a failure to timely request it.

In footnote 1, the en banc opinion makes an issue of Arevalo's attorney's noncompliance with the requirements of Rule 20.1(b). Arevalo's affidavit of indigency contains the elements set forth in Rule 20.1(b)(1) through (11) with one exception: it does not state whether an attorney has agreed to pay or advance court costs. Tex.R.App.P. 20.1(b)(11). However, along with Arevalo's affidavit of indigency, her attorney filed an affidavit stating: "I am providing free legal services, without contingency, to Isaura Arevalo because of her indigence." *See* Tex. R.Civ.P. 145(3) (optional certificate by lawyer that legal services provided without charge). The attorney's affidavit completes the element missing in Arevalo's affidavit.

At the October 10 hearing, Arevalo's attorney stated that the University of Houston was paying for the cost of the translation services at the hearing and for one-half the cost of a psychologist requested in a motion for reconsideration. Although Arevalo's attorney may have paid some of the costs associated with the appeal, the evidence from the attorney's affidavit is that the attorney is not working on a contingency basis and that the agreement is that there will be no fee for the attorney's services. In *Griffin Industries, Inc. v. Thirteenth Court of Appeals,* 934 S.W.2d 349, 352 (Tex.1996), the Texas Supreme Court addressed what effect a client's fee arrangement with her attorney had on the contest to her affidavit of inability to pay costs on appeal. Specifically, the court stated that it faced the question of how courts are to treat the truly indigent who are able to find a lawyer willing to represent them for a contingent interest in any recovery, but are unwilling to pay the costs of an appeal. *Id.* at 353. The court concluded that the contingent fee contract at issue was ambiguous regarding the payment or advancement of costs on appeal, and that the most that could be said about it was that it obligated the attorney to loan the appellate costs to his client. *Id.* Although the evidence was uncontroverted that the client had asked her attorney to pay for the clerk's and reporter's records, the attorney could not or would not do so. *Id.* The court stated:

The right of the indigent to pursue an appeal should not turn on whether an attorney abides by an agreement to pay or to advance costs. When the attorney is obligated to the client to pay or advance costs but will not or cannot do so, the indigent should not be stripped of his or her indigent status.

*Id.* at 354.

The logic in *Griffin Industries* dictates that where an attorney has agreed to represent a client for free and without contingency, as is the case here, an appellant should not be deprived of indigent status merely because she did not ask her attorney to advance court costs or because the attorney has advanced costs other than the cost of the appellate record. This is not a case where there will be a contingent fee recovery out of which the attorney may be reimbursed for the cost of the appellate record. This is not a personal injury suit in which Arevalo seeks money damages; she seeks possession of her children. Accordingly, no one can argue that the attorney (or the UH Legal Aid Clinic, Inc.) is a source of funds from which Arevalo can pay costs. *See Griffin Indus., Inc.,* 934 S.W.2d at 354.

To the extent that the trial court denied Arevalo the right to proceed as an indigent on appeal because of her failure to comply with Rule 20.1(b)(11), the panel that initially considered this case believed the trial court abused its discretion.

### 3. List of Assets

The third issue is whether Arevalo's failure to list all assets in an affidavit of indigency prevents her appeal as an indigent when evidence at the hearing provides a record of assets and liabilities sufficient to support pauper status. Arevalo's affidavit of indigency listed the following assets and liabilities:

(1) Monthly earnings of $770, net.

(2) Monthly expenses of rent ($167.50); child support ($200); telephone ($20); utilities ($48); food and toiletries ($100); truck maintenance and repair ($80); [6] clothing, meals, and entertainment of children during visitation

---

**6.** Arevalo testified that this was a one time charge, not a monthly charge.

($100); laundry ($20), and attorney ad litem fee.

Arevalo stated in her affidavit that she had no savings or checking account, real estate, stock, bonds, or property other than her personal effects. The affidavit also stated that she had been denied a loan for the appeal by the Consumer Bank.[7]

At the hearing on the contest to her indigent status, under direct examination and cross-examination, Arevalo testified that her monthly income was $700 to 720 per month, more or less, without taxes, and that $200 was withheld from her income for child support.[8] She testified that for a two-month period, she had taken a second job to obtain money needed to pay for repairs to her car; however, she had to give up the second job because it required her to work on weekends, the only time she was permitted to see her children. She reiterated the information in her affidavit that she did not own any stocks, bonds, or investments, and that she had no savings or checking accounts. She also repeated that her share of the $335 monthly rent was $167.50, that her light bill was $48 per month on average, and that her telephone bills averaged $16 or $20 per month. She testified she used $60 to $80 of gasoline per month in her car and that her affidavit accurately reflected her monthly expenses.

Although her affidavit mentioned that she had to maintain and repair a 1984 truck,[9] but

had no property other than her "personal effects," Arevalo testified that in the divorce decree, besides the truck, she was awarded a portable stereo, a portable TV, a camera, a .22 magnum rifle, a china cabinet, a bedroom set, and a 40% interest in Millan's retirement plan. The china cabinet and bedroom set were in her possession. She was unable to access the retirement plan.[10] The other items were still in the possession of Millan, who had not turned them over as he had been ordered to do.

Arevalo also stated that she had some rings, chains, and a bracelet, for which a pawn shop had offered her $500, and that she owned a 1990 Toyota Supra that her brother owned, but left with her and in her name when he returned to El Salvador. The brakes on the Toyota were bad, but it was in better running condition than the truck. She used the Toyota to go to work and to pick up her children. She agreed that the Toyota was worth $5,000. She testified she had, within the past year, purchased a color TV, VCR, and a stereo that played cassettes.

In summary, Arevalo's affidavit of indigency did not mention that the divorce decree awarded her the 1984 truck, a 40% interest in Millan's retirement program, and various personal property (possession of which she had not received from Millan); that she owned a 1990 Toyota Supra (it was men-

---

7. Arevalo's testimony was that she had sought loans from two banks, Texas Commerce and Bank One, both of which had refused her. She introduced into evidence a letter from Texas Commerce Bank denying her loan application.

8. However, Arevalo's pay-check stub was introduced, which showed that for the pay period September 8, 1997 to September 21, 1997, her gross wages were $401.46. The stub also indicated that her year-to-date (i.e., January 1, 1997 to September 21, 1997) gross wages were $7,192.36.

9. The truck was in Arevalo's possession. However, at the hearing, the parties stipulated that title to the 1984 truck was in the name of Arevalo's former father-in-law, who had died, and that there would need to be a probate or heirship proceeding or heirship affidavit filed with the tax assessor's office to transfer title of the truck to Arevalo. Arevalo testified that friends had told her that if she could sell the truck, she could get $800 for it, but she testified "no one wants to buy it." Arevalo also stated that the truck's engine

did not work, and that the whole engine needed to be replaced.

10. She introduced into evidence a letter from the Houston Municipal Employees Pension System, which stated that she could not receive funds from the pension system until her former husband actually began receiving a monthly benefit check. The en banc opinion states that there was no evidence of Millan's age, whether his benefit had vested, or whether appellant had tried to sell or mortgage her interest. The original petition for divorce listed Millan's age as 33 years (in February 1996). The letter from the pension system stated that as of August 29, 1997 (after 13 years and six months of service) Millan's contributions to the pension system totaled $1,128.77. The federal Employee Retirement Income Security Act of 1974, popularly known as "ERISA," restricts the assignment or alienation of benefits under a pension plan. 29 U.S.C.A. § 1056(d).

tioned in the divorce decree); and that she owned jewelry valued at $500, a TV, a VCR, and a cassette player.[11] The panel that initially considered this case held that the failure to list the items in an affidavit of indigency did not defeat her status as an indigent because the information was introduced into evidence at the hearing on the contest *See* TEX.R.APP.P. 20.1(g) (if contest is filed, party who filed affidavit of indigence must prove affidavit's allegations). Because the information Arevalo did not list in her affidavit was introduced at the hearing, to the extent that the trial court denied Arevalo the right to proceed as an indigent because she did not list the same information in her affidavit of indigency, the panel that initially considered this case believed the trial court abused its discretion.

### 4. Abuse of Discretion

The fourth issue is whether the trial court abused its discretion in concluding that Arevalo was not indigent. The trial court's conclusion that Arevalo did not fully disclose all assets belonging to her that could be used to cover the cost of the appellate record amounted to a conclusion that Arevalo was not indigent and, therefore, not entitled to a free record on appeal. Here, our task is to examine all the evidence to determine if the trial court abused its discretion when it concluded that Arevalo was able to pay for an appellate record costing $3,423.

Indigency provisions are liberally construed in favor of a right to appeal. *Jones v. Stayman*, 747 S.W.2d 369, 370 (Tex.1987) (holding that letter from appellant's attorney to court reporter was not model of precision, but sufficient to give notice). The Texas Supreme Court has stated the following:

> [I]f a laborer was barely earning the necessities of life for himself and family, ordinarily he should not be required to mortgage his hand tools or household furniture in order to raise funds to pay the court costs.

*Goffney v. Lowry*, 554 S.W.2d 157, 159 (Tex. 1977) (quoting *Pinchback v. Hockless*, 139 Tex. 536, 164 S.W.2d 19, 20 (Tex.Comm'n App.1942)).

If $770 is used as Arevalo's monthly income, and from that is subtracted Arevalo's monthly expenses listed in the affidavit ($200 + $167.50 + $20 + $48 + $100 + $100 + $20 + $50 + $60), Arevalo is left with the remaining monthly sum of $4.50. Recall that Arevalo in her affidavit allowed herself only $25 a week ($100 a month) for food and toiletries. The value of the property awarded to Arevalo in the divorce decree, but which has not been turned over to her, cannot be considered as available to apply to the cost of the appellate record. The Toyota cannot be sold to pay for the cost of the appellate record because Arevalo needs it to get to work and to pick up her children. Moreover, even though Arevalo testified that the Toyota was worth $5,000 "more or less," she also stated that the car was not in good condition, that the brakes were bad, which cast serious doubt on the value of the car.

The initial panel that considered this case believed Arevalo's jewelry, TV, VCR, and cassette stereo were assets that were available to pay for the cost of the appellate record, although their value does not approximate the cost of the appellate record of $3,423. We concluded that the trial court abused its discretion when it denied Arevalo partial pauper status. *See* TEX.R.APP.P. 20.1(k). We decided, based on Arevalo's affidavit of indigency and the evidence introduced at the hearing, that Arevalo does not have the financial wherewithal to pursue her appeal, except for funds she could raise by selling her jewelry, TV, VCR, and cassette stereo.

In the panel opinion, we directed the trial court to vacate its order of October 10, 1997, which denied Arevalo a free record on appeal, and to sign an order overruling the contest to Arevalo's affidavit of indigency. In that opinion, we held that Arevalo could be required to make a partial payment for the record on appeal to the extent she is able to obtain funds by the disposition of her jewelry, TV, VCR, and cassette stereo. In addition, we suggested the trial court could also order Millan to turn over to Arevalo all property awarded to Arevalo under the di-

---

11. Arevalo disclosed the Toyota on direct exami-  nation.

vorce decree that he still has in his possession. That property could have been applied to pay for the cost of the appeal. *See* TEX. R.APP.P. 20.1(k). In that opinion, we recognized that, should it later appear that Arevalo is able to pay more of the costs on appeal, the court reporter, district clerk, or appellee could file a motion to that effect in this appeal. TEX.R.APP.P. 20.1(*l*). We continue to believe that under the law and facts of this case, our proposed disposition of the challenge to Arevalo's indigency was the correct one.

Justices MIRABAL and ANDELL join this dissent.