In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00091-CV


______________________________




MICHAEL RODGERS, SR., Appellant



V.



DR. RODERICK L. MITCHELL, Appellee




 


On Appeal from the 76th Judicial District Court


Morris County, Texas


Trial Court No. 20,470




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Grant




______________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 Michael Rodgers, Sr., appeals from a judgment rendered against him in his malpractice
lawsuit against Dr. Roderick L. Mitchell. Rodgers attempted to obtain certification as an indigent
from the trial court so he could obtain a free record. The court sustained a contest to his affidavit
of indigency. Tex. R. App. P. 20.1. At this point in the proceeding, we have only Rodgers's
contention that the trial court erred by determining he was not indigent. 

 The proper avenue for review is to file an appeal and challenge the ruling on indigency. 
Rodgers has done this, and the district clerk and court reporter have correctly provided this court
with a sufficient record for us to be able to review the order sustaining a contest to an affidavit of
indigency, as required by In re Arroyo, 988 S.W.2d 737 (Tex. 1998). Tex. R. App. P. 25.1(a)
provides that a party may perfect an appeal by filing a notice of appeal. Providing security for costs
is no longer a prerequisite to invoking the court of appeals's jurisdiction. Thus, an indigent party is
no longer precluded from perfecting an appeal and challenging the trial court's order sustaining a
contest to the party's affidavit of indigency as a part of his or her appeal from the judgment. If a
party is required to pay for preparation of the appellate record and does not do so or make
arrangements to do so, Tex. R. App. P. 35.3 excuses the clerk and court reporter from filing the
record, and Tex. R. App. P. 37.3(b) provides the appeal may be dismissed for want of prosecution.

 As stated above, the process of filing a mandamus proceeding to review the trial court's ruling
on an indigency contest is no longer utilized because there is now an adequate remedy by appeal. 
Arroyo, 988 S.W.2d 737. One question which is neither addressed by the rule nor by the cited cases
is whether the complaining party should file an appeal from the ultimate judgment in the case or
whether he or she should file a separate appeal from the order on indigency. The Waco Court of
Appeals first answered that question in Nelson v. State. The court held that a separate notice of
appeal is required to appeal the denial of indigency. Nelson v. State, 6 S.W.3d 722 (Tex.
App.-Waco 1999, order). 

 That court had not previously held that a separate notice of appeal was necessary to appeal
a determination of indigency in either criminal or civil proceedings, and in Nelson, the court stated,
"In the interest of justice, we will apply this holding prospectively to those determinations of
indigency made after the date of this order." Id. at 726.

 Since then, in Baughman v. Baughman, 65 S.W.3d 309 (Tex. App.-Waco 2001, pet. denied),
the Waco court found no reason to distinguish between indigency appeals in criminal cases and civil
cases and held that to "appeal the trial court's order regarding the contest of an indigency affidavit,
whether it is sustained or overruled, the complaining party must file a notice of appeal as to that
order." Id. at 311.

 In our case, Rodgers's brief is based solely on the court's conclusion that he was not entitled
to indigent status. The Notice of Appeal from that order states he is appealing from the court's order
of July 9, 2001, which is the order finding he is not entitled to proceed as an indigent. 

 The clerk's record also, however, contains a separate Notice of Appeal from the judgment
in this case. The judgment was signed June 8, 2001, and the Notice of Appeal from that judgment
was filed on June 21, 2001. 

 We agree with the Waco Court of Appeals that the simplest way to deal with this type
situation is to require a party who wishes to appeal from the order on indigency file a separate notice
of appeal from its appeal of a judgment. In the present case, that procedure was followed, but when
sent to this court and filed by our court, it was set up as a single appeal. We now file the appeal from
the judgment under a separate cause number, and we will turn to the merits of that appeal after we
determine whether indigency has been shown and thus decide whether a free record is available for
that appeal. 

 Our review of a ruling on a motion to proceed as an indigent is governed by an abuse of
discretion standard. De La Vega v. Taco Cabana, Inc., 974 S.W.2d 152, 154 (Tex.
App.-San Antonio 1998, no pet.). In the trial court, the test for indigency is whether a
preponderance of the evidence shows the party would be unable to pay costs "if he really wanted to
and made a good faith effort to do so." White v. Bayless, 40 S.W.3d 574, 576 (Tex. App.-San
Antonio 2001, pet. denied); Arevalo v. Millan, 983 S.W.2d 803, 804 (Tex. App.-Houston [1st Dist.]
1998, no pet.). 

 The court must consider only the defendant's personal financial condition, not those of his
parents, other relatives, friends, or employers. Tafarroji v. State, 818 S.W.2d 921, 923 (Tex.
App.-Houston [14th Dist.] 1991, no pet.). Spouses are an exception to this rule. See Rosales v.
State, 748 S.W.2d 451 (Tex. Crim. App. 1987) (community property and spouse's earnings
considered in determination of indigency); Crauder v. State, 933 S.W.2d 273, 275 n.2 (Tex.
App.-Houston [14th Dist.] 1996, no pet.). This exception is acknowledged by the explicit language
of Rule 20.1, which requires the affidavit claiming indigency to provide specific information about
the income of the party's spouse and whether that income is available to the party. Tex. R. App. P.
20.1(b)(2). 

 In this case, the evidence shows that the family receives food stamps, that Rodgers receives
$675 per month in disability payments, and that the total cash income to the couple per month is
$1,038. Rodgers's wife, Rita, testified that she is not presently working, but that she is presently
enrolled in college (using financial aid) and attempting to obtain a degree in accounting. On cross-examination, she acknowledged she was able to work, although perhaps not for forty hours per week. 
The evidence also shows Rodgers had recently received $6,000 and $14,000 through Social Security
disability in lump sum payments that he used to buy a car and to make the first and last months'
payments to rent a house. 

 At the conclusion of the hearing, the trial court stated that the evidence did not clearly show
the disposition of the $20,000 and noted that the amount of income shown by affidavit did not match
the amount shown by the evidence. The court found that Rita Rodgers was voluntarily unemployed
and that Michael Rodgers was therefore not relieved from paying the costs of the records for the trial
on the merits. The question before this court is whether that decision by the trial court constituted
an abuse of its discretion. 

 The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts
present an appropriate case for the trial court's action; rather, it is a question of whether the court
acted without reference to any guiding rules or principles. The mere fact that a trial court may decide
a matter within its discretionary authority differently than an appellate judge does not demonstrate
such an abuse. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985).

 It is clear from this record the trial court considered all of the factors presented at the hearing. 
The income of a spouse is one factor to be considered in determining indigency; thus the court did
not err by so doing. We find no principled reason the trial court should not be able to also consider
a spouse's voluntary unemployment. The court's order finds support in the evidence, and the mere
fact that there is also evidence from which the trial court could have concluded Rodgers was indigent
is not sufficient to show the trial court abused its discretion in deciding otherwise.

 The trial court's order is affirmed.


 Ben Z. Grant

 Justice




Date Submitted: May 8, 2002

Date Decided: June 27, 2002


Publish



r.
The Kludts Had Standing
            Ordinarily, standing must be established before a court will have the subject-matter
jurisdiction essential to its power to decide a case. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547,
553–54 (Tex. 2000). Here, the Kludts had standing under Section 102.003(a)(12) of the Texas
Family Code, which provides that a suit seeking modification of the parent-child relationship may
be filed by "a person who is a foster parent of a child placed by the Department . . . in the person's
home for at least 12 months ending not more than 90 days preceding the date of the filing of the
petition." Tex. Fam. Code Ann. § 102.003(a)(12) (Vernon Supp. 2004–2005).
            The children were foster children in the Kludts' home from the time the Department placed
them there, July 17, 2001, until the Department removed them April 2, 2003—a period of over
twenty-one months. On June 19, 2003, seventy-eight days after the Department removed the
children from their home, the Kludts filed their petition to modify. Therefore, pursuant to Section
102.003(a)(12), the Kludts had standing. The trial court erred in concluding they had none.


 
Because the Kludts had standing, the trial court's order can be sustained on that basis.
The Court Had Inherent Power To Enter the Order
            But even if the Kludts had no standing to seek conservatorship of the children, the trial court
clearly has a continuing statutory duty to oversee the children's case, including the Department's
supervision of them.
            For example, the supervising court must review the conservatorship appointment of the
Department or another agency and the substitute care thereunder. Tex. Fam. Code Ann. § 263.002
(Vernon 2002). The Department must create a "service plan" for each child in its custody within
forty-five days after the court renders a temporary order appointing it temporary managing
conservator. Tex. Fam. Code Ann. § 263.101 (Vernon 2002). The plan must be filed with the
court. Tex. Fam. Code Ann. § 263.105(a) (Vernon 2002). In the plan, the Department must set
out its goals for the child, specifying how it intends to seek a "permanent safe placement" for the
child, whether by termination and placement for adoption, by return to their family, or by other
means. Tex. Fam. Code Ann. § 263.102 (Vernon 2002). The plan is explicitly subject to review
by the court of continuing jurisdiction over the child. Tex. Fam. Code Ann. § 263.105 (Vernon
2002).
            The Department must prepare a "permanency plan" for each child. Tex. Fam. Code Ann.
§ 263.3025 (Vernon 2002). The trial court must review the Department's permanency progress
reports  in  connection  with  the  "permanency  plan"  created  for  each  child.  Tex.  Fam.  Code
Ann. § 263.303 (Vernon 2002). The trial court's hearings must be held no less frequently than as
set out by statute. See Tex. Fam. Code Ann. §§ 263.304, 263.305 (Vernon 2002). The statutory
scheme sets out a number of things that must be done by the trial court, including reviewing the
appropriateness of the current placement; determining the plans, services, and orders needed to
ensure that a final order is timely rendered; deciding whether the Department has made reasonable
efforts to finalize the permanency plan; and projecting a likely date for the child to be placed for
adoption. See Tex. Fam. Code Ann. § 263.306 (Vernon 2002). At permanency hearings, the court
is required to review the service plan, permanency report, and other information from the hearing,
including the child's safety, the ongoing viability of the current placement, and the compliance and
progress made, including whether the Department has made reasonable efforts to finalize the
permanency plan. Tex. Fam. Code Ann. § 263.306(b). The court should always be guided by "the
best interest of the child." See Tex. Fam. Code Ann. § 263.307 (Vernon 2002).
            The Department appears to be taking the position that the trial court's review may be focused
on only the actions of parents or foster parents toward the child, not the Department's actions that
affect the child. The statute makes no such distinction, and there is no more reason to permit an
agency to act outside the best interest of a child than to allow a parent to do so. Accordingly, the
actions taken by the trial court fall well within the ambit of its explicit and implicit authority to
review this type of proceeding, and it is clear from the court's findings that, in doing so, it was
properly performing its duty to C.G.B. and J.R.B.



            We affirm the judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          April 27, 2005
Date Decided:             May 3, 2005