Opinion issued February 28, 2008













     





In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00313-CV




ROBYN RACHELLE HOPKINS AND GUADALUPE PADILLA, Appellants

V.

DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee




On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 1006-00356J




MEMORANDUM OPINION

          After a bench trial, the trial court terminated the parent-child relationship
between appellants, Robyn Rachelle Hopkins and Guadalupe Padilla, and their
daughter, L.N.H. In two issues, Hopkins


 argues that (1) the evidence was not
sufficient to support the trial court’s termination of her parental rights and (2) the trial
court abused its discretion in denying her affidavit of indigence.
          We affirm.
Background
          L.N.H. was born November 9, 2004. Prior to her birth, Hopkins had already
had multiple referrals to the Department of Family and Protective Services (DFPS)
regarding her parenting of her three older children. None of those children is now
parented by Hopkins. Hopkins also has a prior criminal record, including convictions
for driving while intoxicated, possession of a controlled substance, and assault.
          DFPS removed L.N.H. from Hopkins’ care in January 2006, after Hopkins
became intoxicated and pushed the stroller containing L.N.H. into a bush. In March
2006, Hopkins missed a court hearing in which DFPS reviewed a service plan that
was intended to help Hopkins address the issues that led to her losing custody of
L.N.H. The plan required Hopkins to complete parenting classes, to complete a
substance abuse assessment and follow all recommendations, to complete a
psychiatric evaluation and follow all recommendations, to participate in individual
therapy, to attend all hearings and required meetings, and to maintain stable housing
and employment for at least six months. In April 2006, DFPS made the necessary
referrals to allow Hopkins to comply with her service plan.
          Over the months that followed, Hopkins made attempts to comply with the
service plan by attending parenting classes, AA meetings, and hearings and other
meetings with DFPS. Hopkins eventually completed the required substance abuse
assessment and psychiatric evaluation, but, at the time of the trial, she had not
complied with all of the recommendations made by the substance abuse and
psychiatric centers. 
          At trial, Hopkins acknowledged that she had made a lot of bad choices in the
past and characterized her behavior as irresponsible. She testified that she had a
much better support system now, including members of her church and AA groups. 
Hopkins gave other testimony that she suffered from depression and anxiety, although
she suffered from them less now than she did in the past. She also testified that when
she ran out of one of the prescribed medications, she decided without consulting her
doctor that she would not get a refill because she did not feel that it was helping. She
did not participate in any of the individual counseling required in her service plan or
comply with the recommendations resulting from the psychiatric evaluation as
required by the service plan.
          Hopkins also testified about her relationship with L.N.H. She stated that she
loved her daughter very much and was committed to providing a stable home for her. 
She testified about the nature of her visits with L.N.H., stating that she would go
every other week to visit her daughter and that they would play, watch cartoons, or
do other tasks together such as cooking and laundry. Hopkins testified that she
brought gifts for L.N.H. when she came to visit and that L.N.H. was being supported
by money from an investment that belonged to her. However, later testimony showed
that the money being used for L.N.H.’s care came from an investment made by
Hopkins’ grandfather and left with Hopkins’ mother, Carla Roberts, as a trustee. The
grandfather intended for the money to be used for Hopkins’ children, so Roberts used
it to pay for childcare for Hopkins’ middle two boys and for a nanny for L.N.H.
          Hopkins introduced pay stubs that showed that her monthly income was
approximately $1,400. Her expenses were $440 per month for rent, approximately
$150 per month for her vehicle, plus other living expenses. Hopkins testified that if
she regained custody of L.N.H., she could obtain state certified childcare for $530 a
month and that L.N.H.’s insurance coverage would cost her approximately $96 a
month. There was also evidence that Hopkins moved several times over the course
of the year and had not procured stable housing.
          Hopkins’ mother, Carla Roberts, also testified at trial. L.N.H. had been placed
with Roberts by DFPS after L.N.H. was removed from Hopkins’ care. Roberts
testified that it appeared that some changes had happened in Hopkins’ life, and she
believed that Hopkins was trying, but she was very skeptical that the changes would
last because she had seen Hopkins in similar situations before. Roberts testified that
she did not think that Hopkins had really done anything differently this time
compared to previous occassions when Hopkins had tried to get sober and to turn her
life around. Roberts testified that she believed Hopkins loved L.N.H. and had been
a good mother when L.N.H. was an infant, but that Hopkins was too unstable to
provide a permanent, safe home for L.N.H. Roberts favored placing L.N.H.
permanently with some of her relatives in Tennessee because Roberts’ age prevented
her from caring for L.N.H. permanently.
          Jeff Edwards, L.N.H.’s guardian ad litem, and Kimberly Morgan, the DFPS
case worker, also testified at trial. They both testified that they believed termination
of the parent-child relationship between Hopkins and L.N.H. was in L.N.H.’s best
interest and that they believed L.N.H. would do well with the relatives in Tennessee. 
Morgan testified that those relatives had completed the required home study and had
had a promising visit with L.N.H. at some point before trial. Morgan also testified
that Hopkins had not completed the service plan created for her by DFPS. She
testified that Hopkins made only a “minimal effort [at complying with her service
plan] ten months into the case.” Morgan also testified that Hopkins had missed more
than one hearing and had failed to attend the court-ordered mediation.
          In its final judgment, the trial court made the following findings:
The Court finds by clear and convincing evidence that termination of the
parent-child relationship between [Hopkins] and the child, [L.N.H.], the
subject of this suit[,] is in the child’s best interest.
 
          Further, the Court finds by clear and convincing evidence that
[Hopkins] has: (1) engaged in conduct or knowingly placed the child
with persons who engaged in conduct which endangers the physical and
emotional well-being of the child, pursuant to § 161.001(1)(E) of the
Texas Family Code; (2) contumaciously refused to submit to a
reasonable and lawful order of a court under Subchapter D, Chapter 261,
Texas Family Code[, pursuant to § 161.001(1)(I) of the Texas Family
Code]; [and] (3) failed to comply with the provisions of a court order
that specifically established the actions necessary for the mother to
obtain the return of the child who has been in the permanent or
temporary managing conservatorship of the Department of Family and
Protective Services for not less than nine months as a result of the
child’s removal from the parent under Chapter 262 for the abuse or
neglect of the child, pursuant to § 161.001(1)(O) of the Texas Family
Code[.]
 
          Hopkins filed a notice of appeal and an affidavit of indigence. The District
Clerk challenged the affidavit, and a hearing was conducted in which the trial court
heard more evidence of Hopkins’ financial situation. The trial court then denied
Hopkins’ affidavit of indigence.
Termination of Parent-child Relationship
          In her first issue, Hopkins argues that the evidence was insufficient to support
the trial court’s order finding that termination of the parent-child relationship between
Hopkins and L.N.H. was justified under § 161.001(1)(E), (I), (O) and was in L.N.H.’s
best interest.
Standard of Review
          Section 161.001 of the Texas Family Code authorizes involuntary termination
of a parent-child relationship if the court finds by clear and convincing evidence that
the parent has committed at least one of the acts or omissions listed in subsection (1)
and that termination is in the best interest of the child. Tex. Fam. Code Ann.
§ 161.001 (Vernon Supp. 2007). A trial court only needs to make one finding of
parental misconduct under section 161.001(1) of the Family Code. In re A.V., 113
S.W.3d 355, 362 (Tex. 2003). The Supreme Court has set out some factors that
courts can consider when determining the best interest of the child, including: (1) the
desires of the child; (2) the emotional and physical needs of the child now and in the
future; (3) the emotional and physical danger to the child now and in the future;
(4) the parental abilities of the individual seeking custody; (5) the programs available
to assist these individuals to promote the best interest of the child; (6) the plans for
the child by these individuals or by the agency seeking custody; (7) the stability of
the home or proposed placement; (8) the acts or omissions of the parent that may
indicate that the existing parent-child relationship is not a proper one; and (9) any
excuse for the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367,
371–72 (Tex. 1976). This is not an exhaustive list, and a court need not have
evidence on every element listed in order to make a valid finding as to the child’s best
interest. In re C.H., 89 S.W.3d 17, 27 (Tex. 2002).
          Clear and convincing evidence is “the measure or degree of proof that will
produce in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.” Tex. Fam. Code Ann. § 101.007 (Vernon
2002); In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002). Because termination findings
must be based upon clear and convincing evidence, the Texas Supreme Court has
held that, in a legal sufficiency review, “a court should look at all the evidence in the
light most favorable to the finding to determine whether a reasonable trier of fact
could have formed a firm belief or conviction that its finding was true.” In re J.F.C.,
96 S.W.3d at 266. In viewing the evidence in the light most favorable to the finding,
we assume that the finder of fact resolved disputed facts in favor of its finding if a
reasonable fact finder could do so, and we disregard all evidence that a reasonable
fact finder could have disbelieved or found to have been incredible. Id.
          In conducting a factual sufficiency review, we consider the entire record,
including evidence both supporting and contradicting the finding in determining
whether a fact finder reasonably could have formed a firm conviction or belief about
the truth of the matter on which the State bore the burden of proof. Cervantes-Peterson v. Texas Dep’t of Family and Protective Servs., 221 S.W.3d 244, 250 (Tex.
App.—Houston [1st Dist.] 2006, no pet.). “If, in light of the entire record, the
disputed evidence that a reasonable fact finder could not have credited in favor of the
finding is so significant that a fact finder could not reasonably have formed a firm
belief or conviction, then the evidence is factually insufficient.” In re J.F.C., 96
S.W.3d at 266.
Analysis
          We begin by noting that Hopkins did not challenge the trial court’s finding that
she failed to comply with the provisions of the court-order service plan that
specifically established the actions necessary for her to obtain the return of L.N.H.
pursuant to section 161.001(1)(O) of the Texas Family Code. Because the trial
court’s finding under section 161.001(1)(O), together with the trial court’s finding
that termination was in L.N.H.’s best interest, is sufficient to support the termination,
we do not address Hopkins’ arguments regarding the sufficiency of the trial court’s
findings that she also violated sections 161.001(1)(E) and (I). See In re A.V., 113
S.W.3d at 362.
          Regarding L.N.H.’s best interest, DFPS presented abundant evidence that
Hopkins had not addressed the issues that caused DFPS to remove L.N.H. from her
care and that L.N.H. would be better off in a more stable environment. DFPS
presented Roberts’ testimony that Hopkins, her daughter, had been sober on and off
for the past 20 years or more and that she did not believe Hopkins had truly changed. 
Hopkins’ own testimony demonstrated that she had not been able to maintain stable
housing and that her monthly expenses would exceed her monthly income if she
became responsible for paying the cost of L.N.H.’s childcare and other necessities. 
These facts demonstrated that Hopkins was not in a position to provide for the current
or future needs of L.N.H., either physically or emotionally. See Holley, 544 S.W.2d
at 371–72.
          DFPS also presented evidence that Hopkins had not addressed the substance
abuse and psychiatric issues that originally caused Hopkins to lose custody of L.N.H. 
Roberts’ testimony supported DFPS’s evidence showing Hopkins’ failure to
participate in the court-ordered programs designed to help her with those issues. 
Hopkins’ own testimony failed to show that she recognized the true source of the
problems because she stated that she had made bad choices, but she did not admit that
she was under the influence of drugs and alcohol when she pushed L.N.H.’s stroller
into a bush, in spite of her citation for public intoxication. Hopkins’ testimony also
showed that she decided on her own to discontinue doctor-prescribed psychiatric
medications and was not seeking further treatment. These facts show that Hopkins
would pose physical and emotional danger to L.N.H., both now and in the future, that
she could not provide the stability required by a preschool-aged child, and that she
did not take advantage of the programs already available to help her. See Holley, 544
S.W.2d at 371–72. The evidence presented by DFPS was legally sufficient to allow
the trial court to form a firm belief or conviction that termination was in L.N.H.’s best
interest. See In re J.F.C., 96 S.W.3d at 266
          The evidence was also factually sufficient. Hopkins testified that she visited
L.N.H. every other weekend at Roberts’ home and that they spent quality time
together doing household chores, cooking, playing, and watching cartoons. Hopkins
also testified that she brought L.N.H. toys and clothing when she would come to visit. 
Hopkins also presented evidence that she had maintained a steady job, that she was
attending AA and other substance abuse programs as required by her service plan,
and that she had changed her lifestyle to include people, like her fellow church and
AA members, who would support her.
          There was, however, countervailing evidence that Hopkins had only made a
partial effort to comply with the service plan and that Hopkins blamed DFPS case
workers for her failure to comply. It is the province of the trial court to judge the
credibility of the witnesses in this case. See Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761 (Tex. 2003) (holding that fact finder is sole judge of credibility
of witnesses and weight to be given their testimony). When viewed in light of the
entire record, including evidence both supporting and contradicting the trial court’s
findings, the evidence is factually sufficient to demonstrate that the trial court
reasonably formed a firm conviction or belief about the truth of its findings. See
Cervantes-Peterson, 221 S.W.3d at 250.
          We overrule Hopkins’ first issue.
Affidavit of Indigence
          In her second issue, Hopkins argues that the trial court abused its discretion in
denying her affidavit of indigence.
Standard of Review
          Texas Rule of Civil Procedure 20.1 provides that a party who cannot pay the
costs of appeal may proceed without advanced payment if “(1) the party files an
affidavit of indigence in compliance with [Rule 20.1]; (2) the claim of indigence is
not contested or, if contested, the contest is not sustained by written order; and (3) the
party timely files a notice of appeal.” Tex. R. App. P. 20.1. The affidavit must
identify the party filing the affidavit, state what amount of costs the party can pay,
contain complete information about the nature and amount of any income, contain
information about the party’s spouse’s income and whether that is available, and
contain complete information about real and personal property, cash, and other assets
held by the party. Id. The affidavit must also identify the party’s dependents, debts,
monthly expenses, and ability to obtain a loan for court costs, and it must state
whether an attorney has agreed to provide free legal services and pay or advance
court costs. Id.
          To establish indigence, an appellant must show by a preponderance of the
evidence that she would be unable to pay the costs of appeal if she “really wanted to
and [made] a good faith effort [to] do so.” Arevalo v. Millan, 983 S.W.2d 803, 804
(Tex. App.—Houston [1st Dist.] 1998, no pet.) (en banc). We review the trial court’s
decision for an abuse of discretion. Id. A court abuses its discretion when it acts
without reference to any guiding rules or principles or its ruling is so arbitrary and
unreasonable as to be clearly wrong. Id.
Analysis
          Hopkins filed her affidavit on April 9, 2006, and the District Clerk filed a
contest to the affidavit the next day. Hopkins testified at a hearing that her current
monthly income was approximately $1,400, and that she could make more by
working overtime. Her current monthly expenses include $403 for rent, $240 a
month for food, $125 a month for clothing plus expenses for electricity, telephone,
auto insurance, and gasoline, which take up her full monthly income. However,
Hopkins’ affidavit stated that she could pay $300 immediately, and at the hearing she
stated that she could make other payments on a bi-weekly basis totaling
approximately $300 a month. She also testified that she could work more overtime
or use the $125 budgeted for clothing to pay her court expenses if necessary. 
          Hopkins’ ability to pay $300 dollars toward court costs immediately and to
make further payments on a bi-weekly basis is sufficient to show that she could pay
the court costs if she really wanted to and made a good faith effort to do so. See
Arevalo, 983 S.W.2d at 804. Therefore, the trial court did not abuse its discretion in
denying Hopkins’s affidavit of indigence. See id.
          We overrule Hopkins’s second issue.
 
Conclusion
          We affirm the judgment of the trial court.
 
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Alcala.