Cecil E. SANDERS, Appellant,

v.

TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.

No. 08–89–00099–CV.

Court of Appeals of Texas, El Paso.

July 26, 1989.

A.D. Emerson, Marvin G. Shwiff, Shwiff, Caraway & Emerson, Dallas, for appellant.

Michael S. Holloway, Joann N. Wilkins, Burford & Ryburn, Dallas, for appellee.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a summary judgment, as a result of which the trial court denied all claims filed by Appellant, Cecil E. Sanders ("Cecil"), under the Texas Workers' Compensation Act. We affirm.

Before considering the single point of error brought by Cecil, we must first resolve a jurisdictional question raised by the Dallas Court of Appeals (from whence this case was transferred) at the time the transcript was filed. The record disclosed that Cecil had filed his affidavit of inability to pay costs with the District Clerk of Dallas County on November 2, 1987, but as Cecil admits, notice of the filing of the affidavit was not given to the court reporter of the trial court. When a party is unable to give security for costs, the pertinent sections of Rule 40 of the Rules of Appellate Procedure provide as follows:

(3) When Party is Unable to Give Security:

(A) When the appellant is unable to pay the cost of appeal or give security therefor, he shall be entitled to prosecute an appeal or writ of error by filing with the clerk, within the period prescribed by Rule 41, his affidavit stating that he is unable to pay the costs of appeal or any part thereof, or to give security therefor.

(B) The appellant or his attorney shall give notice of the filing of the affidavit to the opposing party or his attorney and *to the court reporter of the court where the case was tried* within two days after the filing; otherwise, he shall not be entitled to prosecute the appeal without paying the costs or giving security therefor [emphasis added]. Tex.R.App.P. 40(a)(3).

This being a summary judgment case, at the point in time when the judgment was granted, there had been no trial and no record had been made by the court reporter of any proceedings relevant to this appeal or otherwise. Thus, the emphasized phrase of subsection (B) can have no application to a summary judgment appeal such as this. The purpose of the requirement of notice to the court reporter where a case was tried is to allow the reporter the opportunity to file a timely written contest. *Jones v. Stayman,* 747 S.W.2d 369 (Tex.1987). Provisions relating to indigency, like other appellate rules, have long been liberally construed in favor of the right to appeal. *Jones,* 747 S.W.2d at 370. No good purpose would be served by straining the language of the phrase to include summary judgment appeals. The cases cited by Appellee did not involve summary judgments or other non-trial dispositions where a record had not been made or requested. We conclude that this Court has jurisdiction.

■ Turning now to Cecil's point of error to the effect that the trial court erred in granting a summary judgment because there existed a genuine issue of fact as to whether Cecil was injured in the course and scope of his employment, we find from the summary judgment proof that Cecil was injured on December 9, 1985, as the result of an altercation with his brother, Claude Sanders ("Claude"), who was also his foreman, both of whom worked for Baker Drywall immediately prior to the time of the injury. It is necessary here to mention that Cecil claims that Claude had, for a considerable period of time, been withholding a part of Cecil's pay supposedly for the purpose of paying child support to Cecil's ex-wife. According to Cecil, he had learned recently ("that night"), from his ex-wife, that she had not been receiving the child support money from Claude, who was apparently pocketing the money.

The physical violence, resulting in Cecil's injuries, took place at night at a job site where Cecil had been working overtime. From Cecil's own deposition, it appears that Claude came up to Cecil on the job, took him to a room away from the other men and told him he was fired. The deposition is unclear as to the exact sequence of what followed, but it appears from Cecil's testimony that Claude then told Cecil that the reason he was being fired was that he had "been hurt bad too many times" and that was "bad for the insurance company." Cecil next inquired of Claude when he would be getting his check. According to Cecil, Claude replied that he was keeping Cecil's check. Cecil then brought up the child support money which Claude had been withholding and not forwarding to Cecil's ex-wife. At that point, Claude, after telling Cecil that he was going to keep the child support money, attacked Cecil, hitting him in the head and jumping on him, throwing him to the floor and stomping him in the back. Cecil admitted that both he and his brother got angry over the child support money and that Claude attacked him "because of the personal conflict" between them.

■ It is clear from Cecil's deposition that he was fired by Claude before there was any discussion, argument or attack. No issue has been raised or suggested by Cecil as to Claude's authority to fire Cecil. It is also reasonably clear that the attack resulted from the argument over the disposition of the child support money Claude had withheld from Cecil's pay. Once an employment relationship has been terminated, either by the resignation of the em-

ployee or by the employee being fired, an injury incurred at the job site or while leaving the job site subsequent to the termination is not an injury sustained in the course of employment, within the meaning of Article 8309 of the Workers' Compensation Act, where the termination occurs in a place of safety and the employee is not subject to the inherent hazards arising from the employment itself. *Ellison v. Trailite, Inc.,* 580 S.W.2d 614 (Tex.Civ.App. —Houston [14th Dist.] 1979, no writ). An exception to this rule occurs when the employee is required, or reasonably believes that he is required, to remain at or return to the employer's premises for his final paycheck or to take care of some other duty incidental to the termination. *INA of Texas v. Bryant,* 686 S.W.2d 614 (Tex. 1985).

In *Bryant v. INA of Texas,* 673 S.W.2d 693 (Tex.App.—Waco, 1984, writ granted), *affirmed, INA of Texas v. Bryant,* 686 S.W.2d 614 (Tex.1985), the claimant had been laid off and had returned to the employer's premises fifteen days later to pick up her paycheck, believing that she was required to do so by the employer. While on the premises, she fell and was injured. In *Ellison,* an employee who had resigned or been fired from her employment and was waiting on the employer's premises for her severance paycheck, was assaulted by another employee following a disagreement between the two. The Waco Court of Appeals in *Bryant,* distinguished *Ellison* by stating that "Ellison was not truly a worker's compensation case. That suit (in *Ellison*) grew out of an alleged assault and battery by one Langston upon Ellison...." In the Waco Court's opinion, *Ellison* was a case of an injury not sustained in the course and scope of employment rather than a termination case. Here too, the injuries arose out of an alleged assault and battery occurring after Cecil had been fired.

The term "injury sustained in the course of employment" is defined by Article 8309, sec. 1, Worker's Compensation Act, as not to include "[a]n injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employ-

ee, or because of his employment." In such cases, the rule as stated in *Williams v. Trinity Universal Insurance Company,* 309 S.W.2d 850 (Tex.Civ.App.—Amarillo, 1958, no writ) is that where one employee assaults another solely from anger, hatred, revenge or vindictiveness, not growing out of or incident to the employment, the injury is to be attributed to the voluntary act of the assailant, and not as an incident of the employment. See *Moore v. Means,* 549 S.W.2d 417 (Tex.Civ.App.—Beaumont 1977, *writ ref'd* n.r.e.). By Cecil's own admission, Claude became angry and began to attack him after he accused Claude of pocketing the child support money. This was a personal matter between the two brothers having no connection with Cecil's employment, other than the fact, according to Cecil, that the child support money had been handed over to Claude after Cecil cashed his weekly paycheck.

Accordingly, we conclude that not only had Cecil been terminated and thus, was no longer an employee at the time the alleged injuries were inflicted, but also that such injuries resulted from an altercation with his brother over a personal family matter not connected with his employment and, therefore, were not injuries sustained in the course of his employment. The summary judgment granted by the trial court in favor of Appellee is affirmed.