COURT OF APPEALS













COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
 PASO, TEXAS

 

CLEOTILDE GONZALEZ,                                  )

                                                                              )              
No.  08-01-00453-CV

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
388th District Court

TERESO GONZALEZ,                                         )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )                
(TC# 2000CM676)

                                                                              )

 

 

MEMORANDUM   OPINION

 








Appellant Cleotilde Gonzalez, proceeding pro se, seeks to
appeal from a final decree of divorce rendered by the 388th Judicial District
Court on September 27, 2001.  On appeal, Appellant raises at least seven
issues contending that the trial court erred in granting custody of the
children to Tereso Gonzalez, failed to consider the
fault grounds of cruelty, failed to divide the marital estate disproportionate
to benefit the innocent spouse or in a fair and just manner, erred in awarding
part of the Thrift Savings Plan retirement benefits to the children, erred in
allowing Tereso Gonzalez to call witnesses not
announced in the pretrial conference, and erred in granting primary joint
managing conservatorship to Tereso
Gonzalez, rather than Appellant.  At the
conclusion of her brief, Appellant also asserts that the trial court judge
denied her the opportunity to obtain a free record when the judge decided that
Appellant was not indigent.  We reverse
the trial court=s ruling,
abate the appeal, and order the court reporter to prepare the record for this
Court=s review
of Appellant=s
remaining issues.

PROCEDURAL
BACKGROUND

Ms. Gonzalez filed
her pro se notice of appeal on October 29, 2001.  On November 8, 2001, Ms. Gonzalez filed a
pauper=s oath in
the 388th Judicial District Court along with a motion for free appellate
record.[1]  The clerk=s
record in this cause was filed on January 11, 2002.  On February 20, 2002, this Court granted
Appellant=s motion
to extend time to file her brief.  On
March 5, 2002, Appellant filed her brief in this cause.  We observe that Appellant also included an
affidavit of inability to pay costs of the appeal along with her brief.  








In letters dated
January 9, 2002 and January 24, 2002, this Court informed Appellant that the
court reporter had notified the Court that no designation of record and/or
financial arrangements had been received. 
This Court informed Appellant in the letter dated January 24 that if no
response was received by the Court by February 3, 2002, this appeal would be
considered on the clerk=s
record only and that Appellant=s
brief was due February 10, 2002.  By
letter dated February 4, 2002, this Court informed Appellant that the court
reporter had notified the Court for the third time that no financial
arrangements had been received.  In this
letter, the clerk states that it appears that no reporter=s record will be filed and the
Appellant=s brief
is due February 10, 2002.  On February 4,
2002, the reporter=s record
reflecting only an indigency hearing on a motion for
the county to pay for transcript expenses, not the underlying divorce case, was
filed with this Court.  On September 17,
2002, this cause was set for submission on the clerk=s
record, the reporter=s
record of the August 30, 2001 hearing, and Appellant=s
brief.[2]


DISCUSSION

Motion
for Transcript at County Expense

This appeal is
submitted to the Court with the clerk=s
record and only the reporter=s
record on the indigency hearing for this cause.  At the conclusion of her brief, Appellant
asserts that the trial court erred in denying her a free record.[3]  We understand Appellant to be challenging the
denial of her motion requesting approval of payment for transcripts at the
county=s
expense, which was filed on August 9, 2001. 
Upon Appellant=s
motion, the trial court conducted a hearing on August 30, 2001 concerning
Appellant=s
indigent status and the court ultimately denied the motion.  After the trial court entered its final
judgment in the divorce proceedings, Appellant filed in this Court her notice
of appeal seeking to Aalter
the trial court=s
judgment or other appealable order.@ 
Before addressing the merits of Appellant=s
other issues for review, we first consider whether the trial court erred in
finding that Appellant was not indigent for purposes of obtaining the entire
reporter=s record
in this cause. 








Standard
of Review

We review a trial
court=s
determination of indigency status under an abuse of
discretion standard.[4]  White v. Bayless,
40 S.W.3d 574, 576 (Tex.App.--San Antonio 2001, pet.
denied); In re Smith, 70 S.W.3d 167, 168 (Tex.App.--San
Antonio 2001, no pet.).  A trial judge
abuses her discretion if she acts without reference to any guiding rules or
principles, if the facts and law permit only one decision and it is the
opposite of the trial judge=s
decision, or if the judge=s
ruling is so arbitrary and unreasonable as to be clearly wrong.  Arevalo
v. Millan, 983 S.W.2d 803, 804 (Tex.App.--Houston [1st Dist.] 1998, no pet.).  

Appellant
complains that the trial court abused its discretion because it denied her
request for a free record.  An individual
who is indigent is entitled to proceed on appeal without advance payment of
cost.  See Tex.R.App.P. 20.1.  The
party claiming indigency has the burden to prove by a
preponderance of evidence that she would be unable to pay costs if she Areally wanted to and made a good-faith
effort to do so.@  Allred v.
Lowry, 597 S.W.2d 353, 355 (Tex. 1980); White, 40 S.W.3d at 576; Arevalo, 983 S.W.2d at 804. 

Indigent
Status








At the August 30,
2001 hearing, Appellant testified that she had no money to pay for transcripts
to perfect her appeal.  Appellant stated that
she is currently unemployed, but had applications at a restaurant and for
housecleaning jobs.  Appellant receives
$190 a month in food stamps.  Every two
months, Appellant receives $190 from Juarez from land her family has there, but
this income is for her mother who is sharing it with Appellant.  Appellant has a credit card, but can no
longer use it because she went over the limit. 
Appellant requested an increase in her credit line, but the credit card
company denied her request.  Appellant
used to be licensed as a nursing assistant, but this license was subject to
renewal and expired in 1998.  In order to
renew her license, Appellant must retake her course work, which would cost at
least $500.  Appellant also testified
that she had no savings, no checking account, no retirement plan, or other
investments.  Under temporary orders in
the divorce proceeding, Appellant=s
husband had been ordered to pay all bills, utilities, and the house
payment.  Two of the minor children from
the marriage were living with their father at the time of the hearing.  

With respect to
potential sources of income, Appellant stated that there was no one who could
lend her money.  On cross-examination,
Appellant conceded that she owned two cars. 
However, Appellant testified that one car was made in 1979 and has no
value.  The other car was made in 1993
and has a broken transmission.  Appellant
tried to borrow money from the bank on the value of her cars without
success.  Appellant sold a television and
the children=s
computer and used the money to repay her mother for a loan.  








Appellant
testified that she anticipated receiving title to certain marital residential
property.  Appellant stated that if she
had title to the property, she would want to obtain an equity loan on the
property, but could not do this right now because she was unemployed.  The trial court asked Appellant=s counsel when they expected the title
to be transferred to Appellant and counsel for Appellant=s
husband stated that within two days of the final divorce decree the deed to
Appellant would be ready.  At the
conclusion of the hearing, the trial court found Appellant was not indigent.

In reviewing the
trial court=s ruling,
we examine all the evidence to determine if the trial court abused its discretion
when it concluded that Appellant was able to pay for an appellate record.  In determining indigency
status for purposes of a free appellate record, the court must consider only
the individual=s
personal financial condition, not that of her parents, other relatives,
friends, or employers.  See Tafarroji v. State, 818 S.W.2d 921, 923 (Tex.App.--Houston [14th Dist.] 1991, no pet.).  Generally, if an individual is on public
assistance, courts had held that such an individual may proceed without payment
of costs on appeal.  See Griffin
Industries, Inc. v. Honorable Thirteenth Court of Appeals, 934 S.W.2d 349,
351 (Tex. 1996); Baughman, 65 S.W.3d at 315-16.  The court should consider an individual=s present ability to pay costs rather
than her future, more speculative ability. 
Brown v. Clapp, 613 S.W.2d 78, 80 (Tex.Civ.App.--Tyler
1981, orig. proceeding).  Indigency provisions, like other appellate rules, should be
liberally construed in favor of a right to appeal yet construed in a manner
consistent with their purposes.  See
Jones v. Stayman, 747 S.W.2d 369, 369-70 (Tex.
1987); Sanders v. Texas Employers Insurance Ass=n, 775 S.W.2d 762, 762-63 (Tex.App.‑‑El Paso 1989, no writ).  








In this case, the evidence
showed that Appellant was currently unemployed, but was actively seeking
work.  Appellant testified that she had
no savings and was receiving public assistance in the form of food stamps on a
monthly basis.  Appellant=s assets include two cars, which if
sold would not cover the cost of the appellate record.  Appellant anticipated being awarded a
residential property in the divorce decree, but at time of the hearing, this
property had not been turned over to her, therefore it cannot be considered as
available to apply to the cost of the appellate record.  Appellant=s
testimony at the hearing clearly showed that she lacked the financial
wherewithal to pay the costs for an appeal.[5]  Accordingly, we find that the trial court
abused its discretion in denying Appellant=s
motion for transcripts in this cause at the county=s
expense.  Appellant=s seventh issue is sustained.

For the reasons
stated above, we reverse the trial court=s
ruling and abate the appeal.  The trial
court is directed to authorize payment of the record at county expense, and the
court reporter is order to prepare and file the record on or before June 2,
2003, so that this Court may consider Appellant=s
remaining issues presented for review.

 

 

April
3, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

 

 

DISSENTING   OPINION

 








The majority
opinion excuses not only Ms. Gonzalez=s
failure to timely file an affidavit of indigence which complies with Rule
20.1(b) but her failure to prove her financial condition at the time she filed
her notice of appeal.  Several inequities
result from this decision but the majority opinion addresses none of them.  The majority also concludes that Ms. Gonzalez
is indigent and should not be required to pay any costs on appeal even though
she has been ordered by the trial court to pay for only one-half the cost of
the reporter=s record,
or approximately $650, and even though she was awarded two vehicles and a home
in which she has $30,000 in equity. 
Under these circumstances, I do not understand how it can be said that
the trial court abused its discretion in concluding that Ms. Gonzalez is not
indigent and should be required to pay for at least a part of the appellate
record.  Finding myself in disagreement
with the majority opinion=s
treatment of the procedural and substantive issues before the Court, I dissent.

The Underlying Facts

On February 2,
2000, Mr. Gonzalez filed a petition for divorce.  The petition alleged that Mr. Gonzalez lived
in a residence located at 11140 Shiner in El Paso, while Ms. Gonzalez lived at
1900 Ralph Janes. 
Both homes were community property. 
The couple had not resided together since December 1998.  Ms. Gonzalez answered and filed a counter-petition
for divorce and an affidavit of inability to afford court costs.  As of February 22, 2000, she alleged that she
earned approximately $400 per month, she received $240 per month in food
stamps, and her monthly expenses were approximately $400.  During the pendency
of the divorce, Mr. Gonzalez paid for Ms. Gonzalez=s
expenses.  By May 3, 2000, Ms. Gonzalez
was unemployed.  Both parties filed their
inventories and appraisements in June of 2000. 
At that time, the Ralph Janes residence was
valued at $85,621 and the Shiner residence had a market value of $59,234.  The Gonzalez=
owed approximately $55,000 on the Ralph Janes
residence and $29,000 on the Shiner residence. 
Thus, the couple had equity of $30,000 in each home.








The trial court
conducted the final hearing on May 1, 2001 and later set the case for entry of
judgment on July 11, 2001.  The court did
not enter judgment on that date but did order that Ms. Gonzalez give possession
of the minor child to Mr. Gonzalez that same evening.  On August 9, 2001, Ms. Gonzalez filed an
unsworn motion for the county to pay for Athe transcripts.@  Even though the court still had not entered a
final decree of divorce, a hearing was held on the motion for a free record on
August 30, 2001.  

At the hearing,
Ms. Gonzalez did not offer any evidence regarding the cost of the reporter=s record.  Her attorney stated that the trial court had
previously ordered Ms. Gonzalez to pay for only one-half of the reporter=s record.  Counsel estimated that Ms. Gonzalez
would have to pay approximately $400 - $500 for the record.  In correspondence dated January 3, 2002, the
court reporter estimated the cost of the record at $1,300.  According to the trial court=s prior order, Ms. Gonzalez would only
have to pay one-half of this amount--$650. 
While the trial court did not have the benefit of this information at
the hearing and the analysis could be based on the lower figures, I will assume
that Ms. Gonzalez would have been required to pay $650 for the record.

The evidence at
the hearing revealed that Ms. Gonzalez had moved into the Shiner residence on
August 26, 2001.  Mr. Gonzalez was
expected to execute a special warranty deed for his interest in the residence
within the following few days.  Despite
having $30,000 in equity in the home, Ms. Gonzalez did not believe that she
could obtain a home equity loan because she was unemployed.  She admitted, however, that she had not made
any effort to apply for such a loan.  She
had not seriously looked for work during the pendency
of the divorce, a period of eighteen months, because she had been worried about
the divorce proceedings.  She had applied
for a job at a restaurant but she had not been called back.  Ms. Gonzalez had previously worked as a
nursing assistant but she had not renewed her license since 1998.  In order to get her license renewed at this
point, she would be required to take a three week course at a cost of $500.








Ms. Gonzalez was
initially represented by El Paso Legal Aid but she terminated that relationship
and retained different counsel because she disliked the manner in which the
attorney had handled her case.  She paid
retained counsel a fee of $1,500.  At the
time of the hearing, Ms. Gonzalez had no cash on hand in any checking or
savings accounts.  She had not asked any
of her family members for a loan because she did not want to impose on
them.  She had not attempted to sell
either of her vehicles, a 1979 Ford Mustang and a 1993 Ford Aerostar
van, because both of them were in need of repairs.  

The trial court
denied the motion and later signed the decree of divorce on September 27,
2001.  Ms. Gonzalez timely filed her pro
se notice of appeal on October 29, 2001, but she did not pay the filing fee
despite several requests from the clerk=s
office.  On October 30, 2001, the clerk=s office informed Ms. Gonzalez by
letter that the record was due on January 25, 2002, and that she needed to
designate and make financial arrangements to pay for the record.  In November of 2001, Ms. Gonzalez wrote the
court reporter and requested preparation of the record.  The court reporter responded that no
financial arrangements had been made.  On
November 8, 2001, Ms. Gonzalez filed in the trial court her pauper=s oath and motion for free appellate
record.  In addition to being untimely,
her affidavit did not comply with Rule 20.1(b). 
No contest was filed and no hearing was held.  








By separate
letters dated January 9, 2002 and January 24, 2002, the clerk=s office notified Ms. Gonzalez that no
financial arrangements had been made to pay for the reporter=s record and warned her that if no
response were received by February 3, 2002, the appeal would be submitted on
the clerk=s record
alone.  Ms. Gonzalez did not respond to
our inquiries nor did she make financial arrangements to pay for the
record.  On February 4, 2002, the Court
notified Ms. Gonzalez that the appeal would be submitted on the clerk=s record alone and informed her of the
due date for her brief.  Ms. Gonzalez
filed her brief on March 5, 2002, raising issues pertaining to the merits of
the divorce as well as the trial court=s
decision refusing to allow her to proceed without payment of costs.

Procedural Default and Suspension of Rule 20.1








I will first
address the majority=s
decision to suspend Rule 20.1=s
requirements.  A party who cannot pay the
costs in an appellate court may proceed without advance payment of costs if the
party files an affidavit of indigence in compliance with this rule.  Tex.R.App.P.
20.1(a)(1).  The affidavit of indigence
must state what amount of costs, if any, the party can pay and provide complete
information about the party=s
financial condition.  See Tex.R.App.P. 20.1(b).[1]  An appellant must file the affidavit of
indigence in the trial court with or before the notice of appeal.  Tex.R.App.P.
20.1(c)(1).  Consequently, the clerk and
court reporter, along with the other parties to the suit, must be given notice
of the affidavit=s
filing.  See generally Tex.R.App.P. 9.5 and 20.1(d).  Notice is necessary in order to give them an
opportunity to timely file a contest to the affidavit.  See Tex.R.App.P.
20.1(e).  The contest must be filed
within ten days after the date when the affidavit was filed in the trial
court.  Id.  If a contest is not filed, the allegations in
the affidavit will be deemed true and the party will be allowed to proceed
without advancement of costs.  Tex.R.App.P. 20.1(f).  If a contest is filed, the party who filed
the affidavit of indigence must prove the affidavit=s
allegations.  Tex.R.App.P. 20.1(g). 
The contest must be heard within a specific time.  The trial court must either conduct a hearing
or sign an order extending the time for the hearing within ten days after the
contest was filed, but the court may not extend the time for more than twenty
days from the date the order is signed.  Tex.R.App.P. 20.1(i)(2)(A),
(i)(3).

Requiring a
litigant to file an affidavit with or before notice of appeal serves important
functions.  An affidavit of indigence
filed for purposes of trial pursuant to Rule 145[2]
is insufficient to establish indigence for purposes of appeal.  Holt v. F.F. Enterprises, 990 S.W.2d
756, 758 (Tex.App.--Amarillo 1998, pet. denied)(Op.
on reh=g).  Therefore, a new affidavit of indigence must
be filed for purposes of appeal.  Id.  When a party files an affidavit pursuant to
Rule 145, only the defendant is permitted to contest the allegations of
indigence.  Tex.R.Civ.P. 145(1); Holt, 990 S.W.2d at 758.  While the case remains in the trial court,
the clerk and court reporter lack standing to contest a party=s indigent status.  Holt, 990 S.W.2d at 758.  It is only after judgment has been entered
that the clerk and reporter have standing to contest an affidavit of indigence
filed pursuant to Rule 20.1.  See Holt,
990 S.W.2d at 758.








As already stated,
Ms. Gonzalez filed a motion for a free record before judgment was entered but
she did not file an affidavit of indigence with her notice of appeal.  The majority, however, utilizes Rule 2 of the
Texas Rules of Appellate Procedure to excuse Ms. Gonzalez from complying with
Rule 20.1=s
requirement that the appellant file an affidavit of indigence either with or
before the notice of appeal.  See Tex.R.App.P. 2(b).  By taking this step, the majority exempts Ms.
Gonzalez from proving her financial condition as it existed at the time she
filed the notice of appeal.  There may be
cases where good cause exists for applying Rule 2(b), but this is not one of
them.  See e.g., Wells v. Breton Mill
Apartments, 85 S.W.3d 823 (Tex.App.--Amarillo
2001, no pet.)(Op. on reh=g)(where
trial court clerk mistakenly told pro se litigant that she did not have
to file new affidavit of indigence for purposes of appeal, appellate court
applied Rule 2 and permitted appellant to file out of time affidavit of
indigence).  Because a divorce
necessarily involves a division of property, a party=s
financial condition will change with the entry of the decree of divorce.  A review of the appellate record reveals that
is the case here.  Further, for all we
know, by the time Ms. Gonzalez filed her notice of appeal, she could have
secured employment or sold the Shiner residence or other items of property
awarded to her in the divorce decree.  In
my view, there is not only a lack of good cause for suspending the requirements
of Rule 20.1, there are compelling reasons not to do so.








In addition to
removing Ms. Gonzalez=s
burden to prove her financial condition at the time she filed her notice of
appeal, the majority=s
decision also deprives the court reporter and clerk of their right to file a
contest.  Further, it is unfair to
suspend Rule 20.1=s
requirements for a handful of pro se appellants, yet enforce it against
all others.  A pro se litigant is
held to the same standards as licensed attorneys and must comply with
applicable laws and rules of procedure.  Holt,
990 S.W.2d  at 759; Greenstreet
v. Heiskell, 940 S.W.2d 831, 834 (Tex.App.‑‑Amarillo 1997, no pet.).  A pro se litigant who is not required
to comply with the applicable rules of procedure is given an unfair advantage
over a litigant who is represented by counsel. 
Holt, 990 S.W.2d at 759. 
In effect, the majority punishes those appellants who are represented by
counsel on appeal because this Court regularly enforces Rule 20.1 with respect
to all other appellants.

Failure
to Consider Relevant Evidence and

Abuse
of Discretion

 

Even if I agreed
with the decision to excuse compliance with Rule 20.1, I do not find an abuse
of discretion in the trial court=s
denial of Ms. Gonzalez=s
motion for a free record.  The majority
fails to consider all of the relevant evidence in reviewing the trial court=s decision.








In the trial
court, the test for indigency is whether a
preponderance of the evidence shows the party would be unable to pay costs, Aif (s)he really wanted to and made a
good faith effort do so.@  Arevalo
v. Millan, 983 S.W.2d 803, 804 (Tex.App.--Houston [1st Dist.] 1998, no pet.), quoting Allred v. Lowry, 597 S.W.2d 353, 355 (Tex. 1980); Cronen v. Smith, 812 S.W.2d 69, 70 (Tex.App.--Houston [1st Dist.] 1991, orig. proceeding).  We review the trial court=s decision denying a motion to proceed
without payment of costs on appeal for an abuse of discretion.  Arevalo, 983
S.W.2d at 804; Cronen, 812 S.W.2d at 70.  The test for abuse of discretion is whether
the trial court acted in an arbitrary and unreasonable manner, or whether it
acted without reference to any guiding principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 242 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).  The mere fact that a trial judge may decide a
matter within her discretionary authority in a different manner than an
appellate justice in a similar circumstance does not demonstrate that an abuse
of discretion occurred.  Downer,
701 S.W.2d at 242; Bates v. Tesar, 81 S.W.3d
411, 424 (Tex.App.--El Paso 2002, no pet.).  The trial court is in the best position to
observe the demeanor and personalities of the witnesses, and consequently, has
the ability to perceive the forces, powers, and influences that cannot be
discerned by merely reading the record.  Bates,
81 S.W.3d at 424.  Thus, an abuse of
discretion does not occur as long as some evidence of a substantive and
probative character exists to support the trial court=s
decision.  Bates, 81 S.W.3d at
424-25.








At the time she
filed her motion for a free record, Ms. Gonzalez had a community interest in
both the Shiner and Ralph Janes residences.  The divorce decree awarded the Shiner
residence with $30,000 in equity to Ms. Gonzalez.  The majority, however, refuses to take that
property into consideration because Atitle
had not been transferred to her@
at the time of the indigency hearing.  This statement is simply erroneous.  First, Ms. Gonzalez clearly owned and had a
community property interest in both the Shiner and Ralph Janes
residences at the time of the indigency hearing.  The discussions at the hearing about the
expected title transfer refer to the execution of a special warranty deed by
Mr. Gonzalez.[3]  Consequently, it is wrong to exclude this
property from consideration in determining her financial condition.  Second, Ms. Gonzalez was awarded the Shiner
residence in the divorce decree and Mr. Gonzalez presumably executed the
warranty deed so that Ms. Gonzalez could sell the house if she so chose.  Therefore, her ownership of this residence is
relevant evidence on the issue of her financial status at the time she filed
the notice of appeal.  The question is
whether she was indigent at the time she filed the notice of appeal, not at the
time the trial court conducted the hearing on her premature motion for a free
record.  There is no support for the
majority=s
decision to exclude this evidence from consideration.

If all of the
relevant evidence is considered and subjected to appropriately deferential
review, the only conclusion which can be drawn is that the trial court did not
abuse its discretion.  Ms. Gonzalez did
not prove that she is unable to pay for the reporter=s
record after making a good faith effort to do so.  She is able to work yet has made little or no
effort to obtain employment.  She owns a
home in which she has a substantial amount of equity, yet she made no effort to
obtain a home equity loan.  There is
ample evidence supporting the trial judge=s
determination that Ms. Gonzalez is not indigent.  As no abuse of discretion is shown, I would
overrule this issue.  In the absence of a
reporter=s record,
Ms. Gonzalez=
remaining issues are not capable of review. 
The trial court=s
judgment should be affirmed and the costs taxed against Ms. Gonzalez.

 

 

 

April
3, 2003

ANN CRAWFORD McCLURE, Justice 











[1]
No proper affidavit of indigence was filed with or before
Appellant=s notice
of appeal.  See Tex.R.App.P. 20.1.  Under Tex.R.App.P.
20.1(a), a party may proceed on appeal without advance payment of costs if the
party files an affidavit of indigence in compliance with the rule.   Tex.R.App.P.
20.1(c) requires the appellant to file the affidavit of indigence with or
before the notice of appeal.  In the
interest of justice and judicial economy, however, we have authority to
suspend, for good cause, the operation of any rule of appellate procedure
except any provision of the Code of Criminal Procedure or to alter the time for
perfecting an appeal in a civil case.  See
Tex.R.App.P. 2; Wells v.
Breton Mill Apartments, 85 S.W.3d 823, 824 (Tex.App.--Amarillo
2001, no pet.)(Op. on reh=g).  Neither tender of an affidavit of indigence
nor an appropriate filing fee is a prerequisite to perfection.  Id.  Given the circumstances of this case, good
cause exists to support a suspension of the rule that Appellant=s affidavit accompany her notice of
appeal.





[2]
Appellee did not file a brief in this cause.





[3]
We note that a more appropriate avenue for review would have been for Appellant
to file an appeal challenging the trial court=s
ruling on indigency separate from an appeal on the
ultimate judgment in the case.  See In
re Arroyo, 988 S.W.2d 737, 739 (Tex. 1998); Baughman v. Baughman, 65
S.W.3d 309, 311 (Tex.App.--Waco 2001, pet. denied); Tex.R.App.P. 25.1(a).





[4]
Review of a trial court=s
determination of indigent status for purposes of proceeding without advance
payment of costs in an appellate court is usually in the context of a challenge
to the trial court=s order
sustaining a contest to the party=s
affidavit of indigency as a part of his or her appeal
from the final judgment.  See Tex.R.App.P. 20.1 (e).  Here, there was no contest to Appellant=s affidavit of indigency,
which was an attachment to Appellant=s
brief.  With respect to this case,
applying the standard of review and case law analysis for challenging an order
sustaining a contest to an affidavit of indigency
seems appropriate given that Appellant=s
motion in the trial court was an attempt to obtain an Aadvance@ ruling on Appellant=s indigency
status for purposes of appeal.  See
e.g., Tex.R.App.P. 20.2 (In
criminal cases A[w]ithin the time for perfecting the appeal, an appellant who
is unable to pay for the appellate record may, by motion and affidavit, ask the
trial court to have the appellate record furnished without charge.@).





[5]
We note that should it later appear that Appellant is able to pay some or all
of the costs on appeal, the court reporter, district clerk, or appellee have leave to file a motion to that effect in this
appeal pursuant to Tex.R.App.P.20.1(l).





[1]
The affidavit must also contain complete information concerning:

 

(1)        the nature and amount of the party=s current employment income,
government-entitled income, and other income;

(2)        the income of the party=s spouse and whether that income is
available to the party;

(3)        real and personal property the party
owns;

(4)        cash the party holds and amounts on
deposit that the party may withdraw;

(5)        the party=s
other assets;

(6)        the number and relationship to the party
of any dependents;

(7)        the nature and amount of the party=s debts;

(8)        the nature and amount of the party=s monthly expenses;

(9)        the party=s
ability to obtain a loan for court costs;

(10)      whether an attorney is providing free
legal services to the party without a contingent fee; and

(11)      whether an attorney has agreed to pay or
advance court costs.





[2] See Tex.R.Civ.P. 145 (providing for filing
an affidavit of inability by person who is unable to file security for costs of
an original action).





[3] Likewise, Ms. Gonzalez had
to execute a special warranty deed on the Ralph Janes
residence as it was awarded to Mr. Gonzalez in the divorce decree.