JUANA P. FANDERS, APPELLANT, *v.* RIVERSIDE RESORT & CASINO, INC., A NEVADA CORPORATION; ANGELA M. GRISSOM, AN INDIVIDUAL; LOUIS G. MARINO, AN INDIVIDUAL; DAVID E. BARNES, AN INDIVIDUAL; DANNY LUNDSFORD, AN INDIVIDUAL; JOHN C. ENGLAND, AN INDIVIDUAL; AND ONA ROGERS, AN INDIVIDUAL, RESPONDENTS.

No. 51225

December 30, 2010                                    245 P.3d 1159

*Mills & Mills* and *Gregory S. Mills* and *Daniel W. Anderson*, Las Vegas, for Appellant.

*Bell and Young, Ltd.*, and *Richard D. Young*, Las Vegas, for Respondents.

Before HARDESTY, DOUGLAS and PICKERING, JJ.

# OPINION

By the Court, DOUGLAS, J.:

This case arises from an intentional tort and negligence action filed by appellant Juana Fanders after she allegedly was injured by security guards on the premises of her former employer, respondent Riverside Resort and Casino, Inc. Respondents Angela M. Grissom, Louis G. Marino, David E. Barnes, Danny Lundsford, John C. England, and Ona Rogers were the security guards involved in the incident. The district court granted summary judgment to respondents on all counts based on its conclusion that all of Fanders' claims were precluded by the exclusivity provision of the workers' compensation statutes found in the Nevada Industrial Insurance Act (NIIA).

We conclude that the district court erred when it granted summary judgment because there are genuine issues of material fact as to whether Fanders' injuries arose out of and in the course of her employment, and thus, whether they were covered by workers' compensation. Accordingly, we reverse the summary judgment and remand this matter to the district court for further consideration of Fanders' claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Fanders was employed as a guest room attendant at Riverside, where her job was to clean hotel rooms. One day, while on the job, Fanders was called to Riverside's human resources office and confronted with a coworker's accusation that Fanders had used foul language directed at the coworker. Believing that Riverside was fabricating a reason to fire her, Fanders became angry and quit her job.

According to Fanders, she went to the housekeeping area to hand over her keys and identification badge and was instructed to sign termination papers in the human resources office. Fanders asserts that once she arrived in the human resources office, she was approached by security guards, who apparently told her that they would escort her off the premises. The guards, however, had been instructed by Riverside's human resources director Peggy Moma to "86" Fanders from the property. In order to carry out the 86 procedure, the security guards led Fanders to Riverside's security office where they tried to take her photograph. Fanders asked the security guards why they were trying to take her photo, and when they would not tell her, she climbed under a table to avoid having it taken. The parties dispute exactly what happened next, but according to Fanders, one of the guards grabbed her by her hair,

pulled her out from under the table, and called her a derogatory name. The parties agree that Fanders was then handcuffed and placed in a holding cell until a police officer arrived and gave Fanders a misdemeanor citation for battery against one of the guards.

Thereafter, Fanders filed a civil complaint against Riverside and the security guards in which she raised claims for assault and battery, vicarious liability, wrongful imprisonment, negligence, and punitive damages. Fanders' pleadings specifically named Riverside, any corporate associates, and each security guard, and the complaint alleged that Riverside employees had the specific intent to injure her while she was on Riverside's property.

Respondents moved for summary judgment, arguing that the NIIA provided Fanders with her exclusive remedy because the acts that caused her injuries arose out of and in the course of her employment at Riverside. Fanders opposed the motion. Following a hearing on the motion, the district court granted summary judgment to respondents, finding that Fanders' injuries were covered by the NIIA, and that the compensation statute was her sole remedy. This appeal followed.

## DISCUSSION

This court reviews a district court summary judgment de novo, without deference to the district court's findings. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment was appropriate in this case if the pleadings and other evidence presented, viewed in a light most favorable to Fanders, demonstrated that respondents were entitled to judgment as a matter of law and that no genuine issues of fact remain in dispute. *Id.*

### All claims

The threshold question presented in this appeal concerns whether Fanders' injuries arose out of and in the course of her employment with Riverside. If not, Fanders was entitled to proceed on all of her common-law claims without regard to the NIIA. Fanders argues that her injuries did not arise out of her employment, given that she was no longer employed at Riverside when she was injured. Respondents counter that, for purposes of the NIIA, the employment relationship continues for a reasonable amount of time after an employee quits or is fired, so that Fanders was still considered an employee when she was injured, and thus, the NIIA applied and was Fanders' sole remedy.

The NIIA only covers injuries that arise out of and in the course of the injured claimant's employment. NRS 616C.150(1). An in-

jury occurs within the course of employment when there is a causal connection between the injury and the nature of the work or the workplace. *Wood*, 121 Nev. at 733, 121 P.3d at 1032; *Rio Suite Hotel & Casino v. Gorsky*, 113 Nev. 600, 604, 939 P.2d 1043, 1046 (1997) (recognizing that an injury arises out of the employment relationship if it can be traced to the nature of employment or the workplace environment); *see also MGM Mirage v. Cotton*, 121 Nev. 396, 400-01, 116 P.3d 56, 58-59 (2005) (concluding that an injury that occurs when an employee is on the employer's premises and is coming or going to work is considered to have occurred in the course of employment). If the nature of the work or the workplace contributes to or increases the risk of injury more than that of the general public, the injury is covered by the NIIA. *Wood*, 121 Nev. at 736, 121 P.3d at 1034; *see also Rio All Suite Hotel & Casino v. Phillips*, 126 Nev. 346, 240 P.3d 2 (2010) (adopting the increased-risk test for determining whether a claimant's injury arose out of employment).

An injury that occurs after the employment relationship ends, however, is generally not compensable under the NIIA. *See Law Offices of Barry Levinson v. Milko*, 124 Nev. 355, 184 P.3d 378 (2008). Other courts have recognized exceptions to this general rule. *See, e.g., Peterson v. Moran*, 245 P.2d 540 (Cal. Ct. App. 1952) (reversing a tort judgment for an employee who was assaulted as he left the workplace immediately after being discharged); *Ardoin v. Cleco Power, L.L.C.*, 38 So. 3d 264, 266 (La. 2010) (providing that an employee is within the course and scope of employment if his "injury occurs during the reasonable period of time for winding up his affairs"); *Zygmuntowicz v. American Steel & Wire Co.*, 134 N.E. 385, 386-87 (Mass. 1922) (holding that an assault that occurred immediately after the employee was discharged was in the course of the employment); *Anderson v. Hotel Cataract*, 17 N.W.2d 913, 917 (S.D. 1945) (stating that "an employee who quits remains in the course of his employment until afforded a reasonable opportunity to leave the employer's premises"). We find persuasive a Texas appellate court decision, *Sanders v. Texas Employers Insurance Ass'n*, 775 S.W.2d 762 (Tex. App. 1989), in which the court discussed post-termination injuries.

In *Sanders*, the court held that once an employment relationship has ended, regardless of whether the employee quits or is fired, an injury that occurs at the job site or while leaving the job site generally is not sustained in the course of employment. *Id.* at 763-64. The court recognized, however, that even after termination, an injury still might be sustained in the course of employment if it oc-

curs in a place where the employee is subject to the inherent hazards arising from the employment or if the employee is required to remain on the employer's premises "to take care of some other duty incidental to the termination." *Id.* at 764. We agree with the reasoning in *Sanders* that when an injury is the result of an inherent hazard of the employment or occurs in the course of conducting the termination, workers' compensation may apply to injuries sustained after the employment relationship is terminated.

Reviewing the record in the present case raises a number of factual issues concerning whether Fanders' injuries occurred in the course of her employment with Riverside or after her termination. Specifically, the record does not clearly establish whether the employment relationship had actually been severed when Fanders was injured. Fanders insists that she signed termination papers before the injuries occurred. Riverside neither concedes nor denies that Fanders signed termination papers, but no such papers are included in the record on appeal. The record also does not show whether Fanders knew about the 86 policy; additionally, the record also fails to provide what the 86 policy actually entailed as to employees. Moreover, there is a question of fact as to whether Fanders' risk of being subjected to the 86 procedure was increased because of the nature of her position or whether it was a risk faced by the public at large. In particular, it is not clear from the record whether the 86 procedure was "incidental to the termination." *See id.* Because the record evidence regarding the events surrounding Fanders' termination does not establish all of the material facts necessary to conclude that respondents were entitled to judgment as a matter of law, summary judgment was not proper in this case. Accordingly, we reverse the district court's summary judgment and remand this matter to the district court for consideration of whether Fanders' injuries arose out of and in the course of her employment.

On remand, when resolving the disputed factual questions, if the district court determines that Fanders' injuries did arise out of and in the course of her employment, the court must begin its analysis from the proposition that workers' compensation is Fanders' exclusive remedy. The court must, nevertheless, determine whether the claims fall outside of the workers' compensation statutes based on applicable Nevada law.[1] If, on the other hand, the court finds that Fanders' injuries did not arise out of and in the course of her employment, the court must then consider the merits of each of Fanders' common-law claims. In the remainder of this opinion, then, we discuss how Fanders' claims should be treated depending

---

[1]The district court should consider Fanders' punitive damages claims only to the extent that they are based on claims that do not fall under the NIIA. *See* NRS 616A.020(1).

on the district court's conclusions as to whether the injuries arose out of and in the course of her employment.[2]

*Intentional tort claims against the security guards*

Fanders asserts that her intentional tort claims, based on assault and battery and wrongful imprisonment, were properly brought against the security guards because they committed intentional acts that caused her injuries. She acknowledges that the NIIA is the sole remedy for accidental workplace injuries, but she argues that her injuries were caused by intentional acts, not accidental ones. Respondents counter that the NIIA is the sole remedy for work-related injuries, including injuries resulting from assaults by co-employees, as Nevada only recognizes intentional tort claims against an employer.

The NIIA, with few exceptions, provides the exclusive remedy "for an employee on account of an injury by *accident* sustained arising out of and in the course of the employment." NRS 616A.020(1) (emphasis added). The statute defines an accident as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." NRS 616A.030. This court has recognized, however, that an employee may avoid the workers' compensation exclusive remedy provisions when an *employer* "deliberately and specifically intended to injure [the employee]." *Conway v. Circus Circus Casinos, Inc.*, 116 Nev. 870, 875, 8 P.3d 837, 840 (2000); *accord Barjesteh v. Faye's Pub*, 106 Nev. 120, 122, 787 P.2d 405, 406 (1990) (holding that an employer who commits an intentional tort against his employee cannot claim that the act was accidental, so that workers' compensation is the employee's exclusive remedy). A viable intentional tort claim, which subjects an employer to liability outside of the workers' compensation statute, requires the employee to plead facts in his or her

---

[2]Fanders raised vicarious liability and wrongful imprisonment claims against Riverside. On appeal, Fanders argues that there is a question of fact as to whether Riverside may be liable to her because Riverside, through Peggy Moma, intended to injure her. She did not, however, raise this argument before the district court, and thus, she is precluded from raising it now. *See Mason v. Cuisenaire*, 122 Nev. 43, 48, 128 P.3d 446, 449 (2006). Also, in her complaint, Fanders alleged that Riverside was liable on a theory of vicarious liability, but she has not raised this argument on appeal and we decline to address it. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that this court need not consider claims that are not cogently argued or supported by relevant authority on appeal). Nevertheless, we note that it would be appropriate for the district court to address the vicarious liability argument in the first instance on remand.

complaint that establish "the deliberate intent to bring about the injury." *Conway*, 116 Nev. at 875, 8 P.3d 840.

This court has not addressed whether an employee can maintain an action outside of the workers' compensation statute against a co-employee who purportedly commits an intentional tort against the employee. We perceive no reason why common-law tort liability should not extend to purported tortious conduct by a coemployee tortfeasor. This is consistent with our decision in *Wood v. Safeway, Inc.*, 121 Nev. 724, 121 P.3d 1026 (2005). Although the *Wood* court found that workers' compensation applied to the plaintiff's claims against her employer, the court went on to analyze her claims against the subcontractor that employed her assailant under the vicarious liability statute, NRS 41.745. *Wood*, 121 Nev. at 736-41, 121 P.3d at 1034-37. Thus, although not expressly discussed, the *Wood* decision implied that the NIIA is not the sole remedy for certain claims against coemployees. We now make that implication express and hold that when a plaintiff states a viable intentional tort claim against a coemployee, that claim is not barred by the NIIA's exclusivity provisions.

Fanders' complaint contains factual allegations relating to her stated tort claims based on intentional conduct, rather than an accident, and thus, Fanders is not limited to recovery under the NIIA on her intentional tort claims against the security guards. The security guards do not dispute that Fanders stated intentional tort claims against them in her pleadings. Further, they did not argue in the district court that they were entitled to summary judgment on any basis other than the NIIA's exclusivity provision. Thus, even if the district court concludes that Fanders' claims arose out of and in the course of her employment with Riverside, she may still pursue her assault and battery and wrongful imprisonment claims against the security guards.[3]

## CONCLUSION

For the reasons discussed above, we reverse the district court's summary judgment and remand this matter to the district court for proceedings consistent with this opinion.

HARDESTY and PICKERING, JJ., concur.

---

[3]If the district court concludes that Fanders' injuries arose out of and in the course of her employment, she would have to allege specific, intentional acts in order to bring her claims outside the coverage of the NIIA. *Conway*, 116 Nev. at 875, 8 P.3d at 840. Because her negligence claims alleged negligent conduct, they would be covered by the NIIA, which would be Fanders' sole remedy as to those claims. *See id.*